Teressa Gail Williams,        )      C/A No. 0:17-1203-DCC
                              )
              Plaintiff,    )
                              )
v.                           )      **OPINION AND ORDER**
                              )
Nancy A. Berryhill, Acting Commissioner)
of Social Security Administration,    )
                              )
             Defendant.   )
_____ )

Plaintiff has brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits. In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (D.S.C.), this matter was referred to a United States Magistrate Judge for pre-trial handling. The Magistrate Judge issued a Report and Recommendation ("Report") on May 15, 2018, recommending that the Court reverse and remand the case for further consideration by the Commissioner. ECF No. 15. Neither party filed objections to the Report.

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270–71. The Court is charged with making a de novo determination of only those portions of the Report that have been specifically objected to, and the Court may accept, reject, or modify the Report, in whole or in part. 28 U.S.C. § 636(b)(1). In the absence of specific objections, the Court reviews the matter only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) ("[I]n the absence of a timely filed objection, a

district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" (quoting Fed. R. Civ. P. 72 advisory committee's note to 1983 addition)).

In her brief, Plaintiff makes a compelling case for a finding of disability. Indeed, Plaintiff submitted abundant medical evidence documenting her severe impairments, including opinions from her treating primary care physician and orthopedist. The Court has reviewed the opinions of these physicians and finds them to be directly relevant to the disability inquiry and particularly convincing under the circumstances. Inexplicably, rather than affording these opinions the deference and weight they should be afforded under the applicable regulations, the ALJ afforded them "little weight" and appears to have injected his own medical opinions into his decision, which is expressly prohibited by the applicable case law. *See, e.g., Nicholson v. Astrue*, No. 1:09-cv-271, 2010 WL 4506997, at *6 (W.D.N.C. Oct. 29, 2010) ("In the absence of any accepted source opinion expressing Plaintiff's limitations in the form of residual functional capacity, the ALJ's findings about RFC could only have resulted from his own unqualified lay opinion." (citations omitted)). The Commissioner makes a valiant effort to rescue the ALJ's conclusory and untrained medical opinions, but many of the assertions made by the Commissioner in briefing are plainly rebutted by the medical evidence in the record.[1]

---

[1] For example, the Commissioner stated: "The ALJ, however, reasonably found that [Plaintiff's primary care physician's] opinion that Plaintiff could never climb was without support in the record and, thus, a valid reason to question the accuracy of his opinion. There is no evidence in the record that Plaintiff would be unable to climb as may reasonably be required in her light job of housekeeper." ECF No. 12 at 13 (internal citation omitted). Such an assertion belies the medical evidence in this case, as Plaintiff has a history of, *inter alia*, (1) numbness, tingling, and pain in both hands; (2) loss of grip strength; (3) significant bilateral shoulder pain; (4) shoulder bursitis; (5) osteoarthrosis of the shoulder; (6) steroid injections in her shoulder; and (7) bilateral shoulder surgeries.

Because the ALJ's analysis is so limited and conclusory, the record is insufficient for meaningful judicial review of the ALJ's decision. Reluctantly, the Court is constrained to remand the case to the ALJ for further consideration of Plaintiff's treating physicians' opinions. *See Mascio v. Colvin*, 780 F.3d 632, 637 (4th Cir. 2015) (noting that "remand is necessary" because the Court is "left to guess about how the ALJ arrived at his conclusions").

The Court's reluctance to simply remand this case is rooted in the emerging pattern of decisions from the Commissioner that are not sufficiently based in fact or law. The Social Security program serves the "governmental purpose of providing benefits to persons unable to work because of a serious disability." *Bird v. Commissioner*, 699 F.3d 337, 343 (4th Cir. 2012) (citing *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002)). To that end, the program "evaluate[s] a claimant's ability to perform full-time work in the national economy on a sustained and continuing basis," "focus[es] on analyzing a claimant's functional limitations," and "requires claimants to present extensive medical documentation in support of their claims." *Id.* Furthermore, the program has "a detailed regulatory scheme that promotes consistency in adjudication of claims." *McCartey*, 298 F.3d at 1076. Yet, all too often, the Court reviews cases that were not adjudicated fairly, quickly, or accurately. Because of the limited scope of judicial review, the Court is often left in the unfortunate position of merely remanding the case to the ALJ for another hearing and even further delay for a disabled claimant.

---

Put simply, the Commissioner's post-hoc, generalized justifications for the ALJ's findings contravene both the medical evidence of record and the opinions of Plaintiff's treating physicians as to her functional limitations.

A quantitative examination of the Social Security judicial review process is revealing. In fiscal year 2014, the federal courts adjudicated 18,193 appeals from the denial of Social Security benefits. Jonah Gelbach & David Marcus, *A Study of Social Security Litigation in the Federal Courts*, Administrative Conference of the United States at 44 (July 28, 2016).[2] The federal courts ruled for disability claimants in 45% of these appeals. *Id.* In the District of South Carolina, the rate is even higher, with disability claimants prevailing in 54.2% of cases during the period from 2010 to 2013. *Id.* at 84. Of course, there are a variety of reasons for these surprisingly high reversal rates, and the cause of the dysfunction within the Social Security system is a problem best left to scholars to analyze and legislators to solve. But the fact remains that the Court too often finds itself "charged with the unenviable task of deciding yet another in an exceptionally long line of Social Security cases run amok." *Freismuth v. Astrue*, 920 F. Supp. 2d 943, 945 (E.D. Wis. 2013).

Whatever the cause may be, it is clear that the Social Security system is broken. Each and every case that results in years-long appeals through the administrative and judicial review process has, at its core, a person who is alleging disability so severe that he or she can no longer participate in the workforce. For that reason, the consequences of an improper denial of benefits are devastating. Claimants must often forego necessary medical care, incur substantial debt, or even file for bankruptcy merely to keep food on their table and to support their dependents. "Those individuals must suffer the seemingly unending frustration of having their cases, not unlike the one before the court today, drag

---

[2] https://scholarship.law.upenn.edu/cgi/viewcontent.cgi?article=2669&context=faculty_scholarship.

on for years with no ultimate resolution in sight." *Id.* at 946. In addition to this enormous human toll, the failures of the Social Security system also exact tremendous financial costs. The federal courts must devote substantial time, energy, and manpower to reviewing each and every fact intensive case. Additionally, there is "a deluge of taxpayer dollars paid out in the form of attorneys' fees to counsel for prevailing plaintiffs pursuant to the Equal Access to Justice Act." *Id.* at 945.

The Court recognizes that the personnel in the Social Security system—including ALJs—are overworked with very high caseloads. That, however, does not excuse the high number of meritorious appeals that courts see on a daily basis. Often, the errors in the administrative process are so apparent that the government should recognize the appeal for what it is—an inevitable victory for a claimant that will result in a remand.[3] Yet the victory is merely pyrrhic, for the claimant must now submit again to the flawed administrative decision-making process. The Court has no illusions that this Opinion will cause any systemic change in our broken Social Security system. Perhaps it will, however, cause at least some ALJs to more fully and fairly evaluate opinions of medical impairment and limitations by qualified treating physicians, rather than summarily dismissing such opinions with "little weight" so as to artificially manipulate residual functional capacity to militate a finding of "not disabled."

Having reviewed the record in this case, the applicable law, and the findings and recommendations of the Magistrate Judge, the Court finds no clear error and adopts the Report by reference in this Order. Therefore, this case is **REMANDED** to the

---

[3] Sometimes, to its credit, the Commissioner acknowledges that a remand is warranted early in a case. *See Jackson v. Commissioner*, No. 5:17-cv-02720-DCC, ECF No. 18. This, however, occurs far too infrequently.

Commissioner.  Upon such remand, the Court hopes that the Commissioner will arrive at a just, speedy, and inexpensive determination of Plaintiff's claim for benefits.

IT IS SO ORDERED.

s/ Donald C. Coggins, Jr.
United States District Judge

July 25, 2018
Spartanburg, South Carolina